USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/24/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAMMARA TILLMAN,<br><br>　　　　　　　　　　　　　Plaintiff,<br><br>-against-<br><br>THE NEW YORK CITY DEPARTMENT OF HUMAN RESOURCES ADMINISTRATION,<br><br>　　　　　　　　　　　　　Defendant, | 1:20-cv-01153 (MKV)<br><br>**OPINION AND ORDER GRANTING MOTION TO DISMISS** |

MARY KAY VYSKOCIL, United States District Judge:

On March 22, 2021, the Court dismissed Plaintiff Tammara Tillman's Amended Complaint, and granted Plaintiff further leave to amend her complaint to address the deficiencies the Court identified. [ECF No. 38]. Pending before the Court is a Motion [ECF No. 44] by Defendant the New York City Department of Human Resources Administration (the "HRA") to Dismiss Plaintiff's Second Amended Complaint [ECF No. 39] for failure to state a claim. Plaintiff's Second Amended Complaint asserts claims against her former employer, the HRA, for alleged race and disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et. seq.* (the "ADA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et. seq. ("Title VII"), and state and city human rights laws. For the reasons set forth in this opinion, the Court grants Defendant's motion and dismisses Plaintiff's federal claims, and declines to exercise supplemental jurisdiction over her state and city law claims.

1

## BACKGROUND[1]

Plaintiff Tammara Tillman is an African-American woman who was employed by the HRA from 2000 to 2019.  SAC ¶¶ 7, 14.  Plaintiff suffers from "back spasms, sciatica, fibromyalgia, and pinched nerves which affect her muscles and tissue," in other words, "physical impairments that substantially limit several major life activities."  SAC ¶ 8.  For that reason, Plaintiff is "a qualified individual with a disability within the meaning of the [Americans With Disabilities Act]."  SAC ¶ 16.  Plaintiff alleges that while working for the HRA she experienced systemic race and disability discrimination.

In the summer of 2015, her supervisor, Ms. Shoumackher, told Plaintiff "she 'looked very young to have a disability.'"  SAC ¶ 17.  When Plaintiff had a family emergency, she was forced to bring her disabled granddaughter to work.  The next day, Ms. Shoumackher e-mailed Plaintiff "threatening disciplinary action if Ms. Tillman continued to bring her granddaughter to work," though Plaintiff claims "two non-African-American males brought their child to work" and "did not receive an e-mail threat[en]ing disciplinary action."  SAC ¶¶ 20-21.

During this same time period, another employee, Ms. Brenayzen, was assigned to work with Plaintiff and guide her "in completing interoffice training materials."  SAC ¶¶ 24.  In Plaintiff's view, "Ms. Brenayzen lacked work experience in comparison to [her] and failed to provide proper assistance or guidance."  SAC ¶ 25.  While Plaintiff was a "Principal Administrative Associate I," Ms. Brenayzen was a "Staff Analyst," and the two had different supervisors and worked in different departments.  SAC ¶¶ 26-27, 60.  When Ms. Brenayzen

---

[1] The following facts are taken from the Second Amended Complaint, unless otherwise noted, and are construed in the light most favorable to Plaintiff as the non-moving party.  *Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020).

requested time off verbally it was granted, while Plaintiff's verbal requests were denied. SAC ¶ 31. Plaintiff attributes this disparate treatment to her race and disability. SAC ¶ 29.

To accommodate her disability, Plaintiff requested a "standing footrest" in 2015. SAC ¶ 33. She instead received a "rocking footrest." SAC ¶ 33. Plaintiff further sought a "fully adjusted ergonomic chair with lumbar support." SAC ¶ 35. As best read, the Second Amended Complaint asserts that, after an indeterminable delay, Plaintiff received a chair she believed to be insufficient: an "off-balance" "ergonomic chair" with worn down wheels and fraying arms. SAC ¶¶ 37. According to Plaintiff, a "white male and white woman" made accommodation requests that were not met with delay. SAC ¶ 36. Plaintiff viewed the ergonomic chair and rocking footrest as "unreasonable accommodations" for her disability. SAC ¶ 38. In September 2015, after notifying the HRA of the perceived inadequacy, Plaintiff took a leave of absence, in part exacerbated by the malfunctioning chair. SAC ¶¶ 39, 40, 42. The HRA "fulfilled [Plaintiff's] request for an ergonomic chair [in October,] while [Plaintiff] was on medical leave of absence." SAC ¶ 41.

Plaintiff was on leave from September 2015 through August 2016. SAC ¶ 42. The leave was both medical leave and because the "level of harassment [Plaintiff experienced at the HRA] was taking [a toll] on her well-being." SAC ¶ 42. During her leave, the ergonomic chair and footrest were reassigned to another city employee. SAC ¶ 13. While on leave, Plaintiff "filed a complaint with the New York City Commission of Human Rights and a charge with the Equal Employment Opportunity Commission." SAC ¶ 43.

Plaintiff returned to work in August 2016 at a new location and was assigned different supervisors: Ms. Russ and Ms. Baez. SAC ¶¶ 46. "[F]or over a month" after her return, Plaintiff did not receive an ergonomic chair. SAC ¶ 48. When it arrived, Plaintiff thought it was

3

"uncomfortable," prompting Ms. Baez to comment "We went through all of this to get you a chair and you are going to complain about it." SAC ¶ 49. Months later, Ms. Baez "openly mocked and made offensive gestures with her body on the office floor," making fun of Plaintiff's need for an ergonomic chair. SAC ¶ 51.

In April 2017, Plaintiff requested an annual job performance review from Ms. Russ, who responded "No promotions are available for you." SAC ¶ 57. Nonetheless, Plaintiff interviewed for the Homeless Prevention Administration unit, a job she believes "[i]t is well established that [she] possessed the necessary experience for." SAC ¶¶ 58-59. Plaintiff did not get the job, which went to "someone else with less qualifications and employment history." SAC ¶¶ 58-59.

Plaintiff alleges a number of other examples of what she maintains was disfavorable treatment by other employees. One employee, Ms. Jones, called Plaintiff "an evil feisty spirit" and took two to three hour lunch breaks, while Plaintiff took only an hour lunch break. SAC ¶¶ 64-65. When an "Asian woman" complained to Ms. Baez about the treatment she received from Ms. Jones, it was "quickly addressed." SAC ¶ 68. When Ms. Russ passed away, and Plaintiff was asked to write a "hip-hop song and rap" for her memorial. SAC ¶ 70. After Plaintiff agreed to perform, she alleges that a different employee interrupted her performance to shout "If you don't want to be here you don't have to be here," which was "humiliat[ing] and belittl[ing]." SAC ¶¶ 70-71.

In September 2017, Plaintiff began working two days a week at a new location in 4 World Trade. SAC ¶ 74. She did not receive an ergonomic chair for that location until January 2018. SAC ¶ 74.

Between November and December 2017, Plaintiff took bereavement leave following the death of her daughter. SAC ¶¶ 81-82, 86. During that leave, Ms. Baez reached out to Plaintiff

4

and asked when she would return. SAC ¶ 84. Once back, Plaintiff "could not function or concentrate," prompting one employee to say she needed to calm herself down when she was crying, and others to say "Don't let them see you cry, it's a sign of weakness." SAC ¶¶ 86-87. Plaintiff took another, final leave of absence in January 2018. SAC ¶ 88. She was terminated in January 2019 "because she had exceeded the maximum amount of time that an employee is permitted to be on medical leave before termination." [ECF No. 56] at 13. Plaintiff was informed that she would be terminated when she went to retrieve items from the office in December 2018. SAC ¶ 90. Ms. Baez told her "Leave quietly and don't make a stink about it," SAC ¶ 90, and later that she "got rid of all the troublemakers." SAC ¶ 91.

## PROCEDURAL HISTORY

Plaintiff commenced this action on February 7, 2020. [ECF No. 2]. Thereafter, with leave of the Court, she amended her complaint, and Defendants moved to dismiss. [ECF Nos. 25, 26]. The Court granted Defendants' motion [ECF No. 38] (the "March 22 Order"), and granted Plaintiff leave to file a second amended complaint, in order to address the deficiencies identified in the March 22 Order. Plaintiff then filed her Second Amended Complaint [ECF No. 39]. The Second Amended Complaint asserted claims against both the HRA and individual defendants Robert Houser, Michael Greene, Maria Ciniglio, Rad Jacuch, Klara Shoumaker, and Stephanie Grant. By joint stipulation with the HRA, Plaintiff agreed to dismiss the individual defendants with prejudice. [ECF No. 51]. Pending before the Court is Defendant HRA's Motion to Dismiss the Second Amended Complaint. [ECF No. 44]. Defendant filed a Memorandum of Law in Support [ECF No. 45] ("Def. Mem."), Plaintiff thereafter filed an opposition to the motion, [ECF No. 56] ("Opp."), and Defendant replied [ECF No. 58] ("Reply").

## LEGAL STANDARD

To withstand dismissal for failure to state a claim pursuant to Rule 12(b)(6), a pleading "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although the plausibility standard is "not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In deciding a motion to dismiss under Rule 12(b)(6), a court must accept factual allegations as true and construe all reasonable inferences in the plaintiff's favor. *ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009). The Court, however, does not accept as true "legal conclusions" contained in a complaint. *Iqbal¸*556 U.S. 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim upon which relief can be granted. *Id.*

## DISCUSSION

Plaintiff asserts seven causes of action against the HRA: 1) a failure to accommodate claim under the ADA; 2) a disability discrimination claim under the ADA; 3) a race discrimination claim under Title VII; 4) a discrimination claim under 42 U.S.C. § 1981[2]; 5) a federal hostile work environment claim; 6) a disability and race discrimination claim under the New York State Human Rights Law (the "SHRL"); and 7) a disability and race discrimination claim under the New York City Human Rights Law (the "CHRL"). SAC ¶¶ 92-105; Opp. at 7-8. For the reasons that follow, Plaintiff's federal claims fail to state a claim upon which relief can

---

[2] In her Opposition, Plaintiff agreed that her Section 1981 claim should be dismissed for the reasons stated by the HRA. Opp. at 8. The Court therefore dismisses Plaintiff's Section 1981 claim.

6

be granted, and the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

I. **PLAINTIFF'S FEDERAL CLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

   A. ***Plaintiff's ADA Failure to Accommodate Claim Fails***

To make out a *prima facie* case for failure to accommodate a disability, a plaintiff must allege that "'(1) he is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" *McBride v. BIC Consumer Prods. Manufacturing. Co., Inc.*, 583 F.3d 92, 97 (2d Cir. 2009) (quoting *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004)).

The Parties' dispute crystalizes around the third and fourth prong of the *prima facie* inquiry: whether by reason of delay, Defendant essentially refused to accommodate Plaintiff, or whether the ergonomic chairs and footrest either were unreasonable accommodations. *See* Def. Mem. at 9 ("[P]laintiff fails to allege that HRA refused to make accommodations for her disability"); Opp. at 9 (arguing the "HRA did not provide a reasonable accommodation . . . because the ergonomic char and rocking footrest were insufficient accommodations.").

The ADA requires an employer to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual[.]" 42 U.S.C. § 12112(b)(5)(A). As Plaintiff notes, the ADA "envisions an interactive process" between the employer and employee to determine whether and what accommodation is appropriate. *Stevens v. Rite Aid Corp.,* 851 F.3d 224, 231 (2d Cir. 2017); Opp. at 7. The interactive process facilitates

7

the requisite employer-employee dialogue concerning the at-issue disability; however, "[e]mployers are not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee." *Noll v. IBM*, 787 F.3d 89, 95 (2d Cir. 2015).

Plaintiff alleges that when she requested a "standing footrest" she instead received a "rocking footrest," which "agitates [her] impairments" that "substantially limit several major life activities." SAC ¶¶ 33-34. With respect to her request for an ergonomic chair, Plaintiff acknowledges that she received various chairs at various times. Specifically, Plaintiff took two leaves of absences: one between September 2015 and August 2016, and a one from January 2018 until her termination in January 2019. SAC ¶¶ 42, 88-91. After Plaintiff's first request in May 2015, she was provided with a chair she describes as "worn down," "off-balance," and with frayed arms. SAC ¶ 36. At some point, Plaintiff complained about the perceived inadequacy, but she left on a leave of absence before the chair was replaced in October 2015. SAC ¶¶ 39, 41. When she returned from leave almost a year later, she again requested an ergonomic chair, which she received "over a month later." SAC ¶ 48. Plaintiff alleges that she again said that the more recently provided chair was "uncomfortable and did not feel like adequate support for her back." SAC ¶ 49. In addition, when Plaintiff went out on leave, she alleges that her "ergonomic chair [and] footrest [were] not stored for her return," but instead "reassigned to another city employee." SAC ¶ 13.

Plaintiff's ADA claim fails because she does not explain why the ergonomic chairs provided or the rocking footrest were not reasonable accommodations. With respect to the footrest, Plaintiff does not allege that she requested the footrest after her return from the September 2015 – August 2016 leave of absence. *See* SAC ¶¶ 47-50, 74 (discussing only the ergonomic chair accommodation). Plaintiff alleges only that when she was provided the footrest,

8

it was an unreasonable accommodation because it "agitate[d] [her] impairments." SAC ¶ 34. The Second Amended Complaint is otherwise devoid of facts that indicate Plaintiff complained about the footrest before she went on leave. She simply makes the conclusory allegation that the "footrest provided by the Defendant [was an] unreasonable accommodation[.]" *See* SAC ¶¶ 37-38. The Court cannot credit the threadbare recitals of an element of a *prima facie* claim. *See Iqbal*, 556 U.S. at 678 (the Federal Rules "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). Indeed, Plaintiff bears the burden of showing that the accommodation was not reasonable. *Miller v. McHugh*, 2016 WL 698147, at *5 (S.D.N.Y. Feb. 16, 2016) ("[T]he employer need not demonstrate that the employee's requested accommodation is impractical; rather the employee must plausibly allege that the offered accommodation was not reasonable." (citing *Fink v. N.Y.C. Dep't of Pers.*, 855 F. Supp. 68, 72 (S.D.N.Y. 1994)).

Moreover, the law vests an employer with discretion as to what is an effective accommodation. With respect to the ergonomic chairs, Plaintiff herself pleads that every time she requested an ergonomic chair she received one. SAC ¶¶ 35, 37, 41, 48, 75. Those chairs were apparently not to her liking, and did not arrive as quickly as Plaintiff might have wished. The law is clear that employers need not provide the exact accommodation requested, so long as the requested accommodation received is reasonable. *Noll*, 787 F.3d at 95; *Waltzer v. Triumph Apparel Corp.*, 2010 WL 565428, at *6 (S.D.N.Y. Feb. 18, 2010) ("Employees are not entitled to hold out for the most beneficial accommodation, and the employer need not offer the accommodation that the employee prefers. Instead, when any reasonable accommodation is provided, the statutory inquiry ends."); *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002) ("[T]o avoid . . . liability the employer need not offer the accommodation the employee prefers."). For example, implementing regulations of the ADA state that "the employer

providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide." 29 C.F.R. § 1630 app.  Plaintiff never alleges that she could not perform essential function of her job without the ergonomic chairs provided, or why a different chair would allow her to fulfil those duties.  *See McBride*, 583 F.3d at 97 (*prima facie* case must make out that Plaintiff, "with reasonable accommodation[s,] could perform the essential functions of the job at issue").

Plaintiff argues that delay in providing an ergonomic chair rendered any accommodation effectively denied.  *See* Opp. at 10.  However, delay alone is not a constructive denial to reasonably accommodate a disability absent allegations of discriminatory intent on the part of the employer.  *See, e.g.*, *Novick v. Vill. Of Wappingers Falls*, 376 F. Supp. 3d 318, 337 (S.D.N.Y. 2019) ("Plaintiff must plead sufficient facts to raise the inference that the failure was motivated by discriminatory intent.") (internal quotation marks omitted); *Perkins v. City of New York*, 2022 U.S. Dist. Lexis 6997, at *10-11 (S.D.N.Y. Jan 13, 2022) ("To prevail on her claims that defendant failed to accommodate her request . . . in a timely manner, plaintiff must plausibly allege that the delay was motivated by discriminatory intent."); *Logan v. Matveevskii*, 57 F. Supp. 3d 234, 258 (S.D.N.Y.2014) (collecting cases).  Despite the Court's earlier ruling that laid out the deficiencies in Plaintiff's complaint, March 22 Order at 14, Plaintiff's scattershot amended pleading continues to provide little that draws a nexus from any perceived discriminatory intent to the delay in accommodation.  *See Novick*, 376 F. Supp. 3d at 337; *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019) (plaintiff must show "the connections between [] the failure to accommodate" and the adverse action).  Plaintiff does allege that a "white male and white woman did not have to make repeated requests for a

reasonable accommodation" or "experience delays in receiving accommodations." SAC ¶ 36. Beyond adding those words, Plaintiff states no further facts about these individuals or their disability accommodation requests. Disparate treatment may establish a *prima facie* discrimination case under the ADA, but the burden lies with Plaintiff to establish a colorable comparison. *See McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001); *Logan*, 57 F. Supp. 3d at 258.

Plaintiff also does not explain how the delay in providing her accommodations was *because* of her accommodation or *because* of her race, and the Court cannot reasonably draw such an inference where one does not exist from the allegations in the complaint. Further, any remarks made by her supervisor with respect to her disability and accommodation occurred *after* she had received an ergonomic chair accommodation. *See* SAC ¶ 49 (Plaintiff's supervisor stated that "We went through all of this to get you the chair and you are going to complain about it."). While Plaintiff did experience certain delays in receiving her accommodations, a delay alone does not render an accommodation unreasonable or constructively denied. *See Saunders v. Queensborough Community College*, 2015 WL 5655719, at *7 (E.D.N.Y. Sep. 24, 2015) (seven-month delay in receiving accommodation not unreasonable).

Finally, the Court notes that Plaintiff appears to argue that her ADA claim may rest solely on a perceived failure on the part of the HRA to engage in an interactive process. *See* SAC ¶ 39. However, "An employer's failure to engage in a sufficient interactive process does not [by itself] form the basis of a claim under the ADA." *McBride*, 583 F.3d at 101. Moreover, Plaintiff's contention is belied by the accommodations she received: a footrest and multiple ergonomic chairs. While Plaintiff paints a picture of minor slights and inconveniences, she does not explain

how they relate to a failure to engage in the process through which Plaintiff *did* receive accommodations.

Put simply, no facts reasonably support an inference that Plaintiff was denied a reasonable accommodation, as such her failure to accommodate claim is dismissed.

### B. *Plaintiff's ADA and Title VII Discrimination Claims Fail*

To make out a *prima facie* case of disability discrimination, a plaintiff must allege that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013). If the plaintiff establishes a *prima facie* case of discrimination, the burden then shifts to the defendant, who may rebut the claim with legitimate, non-discriminatory reasons for the adverse employment action. *See Sattar v. Johnson*, 129 F. Supp. 3d 123, 137 (S.D.N.Y. 2015). "The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981) (citation and footnote omitted). If the defendant presents legitimate reasons for the alleged discriminatory action, the burden then shifts back to the plaintiff who must establish that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Sattar*, 129 F. Supp. 3d at 137 (internal quotation marks omitted). At the end of the burden-shifting framework, the plaintiff must have established not only a discriminatory motive, but that the

motive was a 'but-for' cause of the adverse action." *Natofsky v. City of New York*, 921 F.3d 337, 349 (2d Cir. 2019).[3]

Similarly, to succeed on a claim of employment discrimination under Title VII, a plaintiff must establish that 1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (quoting *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008)). On a motion to dismiss, a plaintiff has the "'minimal burden' of alleging facts 'suggesting an inference of discriminatory motivation.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (citing *Littlejohn*, 795 F.3d at 310). However, a plaintiff must still "alleg[e] facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87. Circumstantial discrimination is "'the more favorable treatment of employees not in the protected group,' who are 'similarly situated in all material respects.'" *Farsetta v. Dep't of Veterans Affs.*, 2017 WL 3669561, at *5 (S.D.N.Y. Aug. 24, 2017) (first quoting *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015), and then quoting *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014)). "Whether the plaintiff and these comparator employees are similarly situated in 'all material respects will vary from case to case,' and while '[t]he plaintiff's and comparator's circumstances must bear a reasonably close resemblance,' they 'need not be identical.'" *Id.* (citing *Brown*, 756 F.3d at 230).

---

[3] Although this burden-shifting framework was developed in the context of the summary judgment stage, it applies equally on a motion to dismiss. *See Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. 2015).

13

Plaintiff's ADA and Title VII discrimination claims each fail as a matter of law for the same reason: she does not allege she suffered an adverse action, and she does not provide any information with respect to her comparator's circumstances.

Plaintiff herself states that she "did not experience a demotion, negative change in title, significant loss of benefits, [or] diminished responsibilities." Opp. at 12. Indeed, she acknowledges that her ultimate termination was a result of a ministerial rule limiting the total amount of time one may be on medical leave. Opp. at 13. Instead, Plaintiff's discrimination claims splinter into two separate theories of adverse action: a denial of requested days off and training, and a failure to promote. *See* Opp. at 12-13.

**Requests for days off and to attend training.** Plaintiff points to the denial of verbal requests for days off as indicative of "racial and or disability animus." Opp. at 12 (citing SAC ¶ 31). These unenumerated, isolated incidents fall far short of an adverse employment action. *See Chukwuka v. City of New York*, 795 F. Supp. 2d 256, 261 (S.D.N.Y. 2011), *aff'd*, 513 F. App'x 34 (2d Cir. 2013) (summary order) ("[T]he denial of vacation time does not generally rise to the level of an adverse employment action."); *see also Feliciano v. City of New York*, 2015 U.S. Dist. LEXIS 92623, at *28-31 (S.D.N.Y. July 15, 2015) (overtime claim dismissed where plaintiff alleged "only one instance of denial of overtime."). Nor do Plaintiff's allegations raise an inference that her race or disability was the motivating factor for denial of her requests. Plaintiff cannot rehabilitate her claims by alleging that a white co-worker had verbal requests for time off approved because Plaintiff admits they are not similarly situated. *See* SAC ¶¶ 26-27, 31 (Plaintiff was a "Principal Administrative Associate I" and her comparator was a "Staff Analyst" in a different department with a different supervisor). *See Novick v. Village of Wappingers* Falls, 376 F. Supp. 3d 318, 344 (S.D.N.Y. 2019) (allegations that others had been absent without

14

authorization insufficient under ADA where "Plaintiff does not allege the reasons for the proposed comparators' unauthorized absences, whether they were subsequently able to offer a proper explanation or excuse for their absences, whether they were disciplined in some other way, and whether they had the same supervisors as Plaintiff."); *Fox v. State Univ. of New York*, 686 F. Supp. 2d 225, 230 (E.D.N.Y. 2010) (dismissing disability discrimination claim where plaintiff failed to name any similarly situated nondisabled comparators who were treated differently). Similarly, the denial of Plaintiff's request to attend two trainings does not shore up a discrimination claim because she does not allege she was harmed by the denial, or that any comparator's request to attend the training was granted. *See Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 224 (E.D.N.Y. 2014) (denial to attend training not adverse employment action because material harm from denial not shown); *Trachtenberg v. Dep't. of Educ.*, 937 F. Supp. 2d 460, 468 (S.D.N.Y. 2013).

**Failure to promote.** Plaintiff alleges that she was qualified for working in the Homeless Prevention Administration Unit but was not given the role. *See* Opp. at 13 (citing SAC ¶¶ 58-59). Plaintiff however baldly states without more that "[i]t was well established that Ms. Tillman possessed the necessary experience for the job." SAC ¶ 59. She does not allege any facts that raise any inference that the denial was a result of her race or disability, let alone that she *was* qualified for the position. *Iqbal*, 556 U.S. at 678; *Vega*, 801 F.3d at 85 (the "facts alleged must suggest[] an inference of discriminatory motivation.'").

Because Plaintiff has not suffered any adverse employment action as a result of the alleged discriminatory behavior, the Court grants Defendant's motion to dismiss Plaintiff's Title VII and ADA discrimination claims.

C.	*Plaintiff's Federal Hostile Work Environment Claim Fails*

While "the Second Circuit has not decided whether a hostile work environment claim is cognizable under the ADA[,] [d]istrict courts within this Circuit, however, have recognized such claims, applying the same standard applicable to hostile work environment claims under Title VII." *Garcia v. Kings Cty. Hosp. Ctr.*, 2018 WL 389212, at *6 (SDNY Jan. 11, 2018) (citing *Robinson v. Dibble*, 613 F. App'x 9, 13 n.2 (2d Cir. 2015). Thus, to establish a hostile work environment under either the ADA or Title VII, Plaintiff must plead facts that would tend to show that the complained of conduct: (1) "is objectively severe or pervasive--that is, . . . creates an environment that a reasonable person would find hostile or abusive"; (2) creates an environment "that the plaintiff subjectively perceives as hostile or abusive"; and (3) "creates such an environment because of the plaintiff's [protected characteristic]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)). The Court assesses hostility by considering the totality of the circumstances, including factors such as: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotation marks and citation omitted).

The Second Amended Complaint covers events from 2015 to 2019. *See* SAC ¶¶ 17, 91. In those four years, reading the Second Amended Complaint generously, the Court can identify a scant fourteen scattered allegations of statements and actions with which Plaintiff took umbrage, by different people, at different locations, at different times. *See* SAC ¶¶ 17, 18, 20, 31, 49, 51, 61, 63, 64, 70, 73, 84, 87, 90. For some allegations, Plaintiff summarily attributes the conduct to racial or disability discrimination. *See* SAC ¶¶ 22, 29, 67; *Iqbal*, 556 U.S. at 678. However, other allegations are untethered from any discriminatory motivation, conclusory or not. In short,

Plaintiff's allegations, individually or collectively, do not come close to the type and frequency of conduct sufficient to create a hostile work environment. *See Alfano v. Costello*, 294 F.3d 365, 379-80 (2d Cir. 2002); *Trotta v. Mobil Oil Corp.*, 788 F. Supp. 1336, 1350 (S.D.N.Y.1992) (eleven incidents over the course of more than seven years too infrequent to create hostile work environment). The Court therefore dismisses Plaintiff's hostile work environment, whether alleged under Title VII or the ADA.

II. **THE COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S REMAINING STATE LAW CLAIMS**

Plaintiff also brings race and disability discrimination claims under the SHRL and CHRL. SAC ¶¶ 5, 104-105. Defendant urges this Court to "exercise jurisdiction over [the SHRL and CHRL claims] and dismiss them on the merits." Def. Mem. at 20. Having dismissed the claims over which it has original jurisdiction, the Court's power to retain supplemental jurisdiction is discretionary. *See* 28 U.S.C. § 1367(c)(3). In this case, diversity jurisdiction does not exist. *See* SAC ¶¶ 5, 8-9 (Plaintiff and the HRA are both citizens of New York). Courts routinely decline to exercise supplemental jurisdiction where all federal claims are dismissed and diversity jurisdiction does not exist. *See, e.g.*, *Cataldi v. United Water N.Y.*, 363 F. App'x 769, 770 (2d Cir. 2010) (citing 28 U.S.C. § 1367(c)(3)). Further, Defendant raises state statute of limitations defenses with respect to the SHRL and CHRL claims. *See* Def. Mem. at 8; Reply at 10. Permitting a state court to address those claims would be consistent with the Supreme Court's mandate that this Court should avoid "[n]eedless decisions of state law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also id.* ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Rosa v. Triborough Bridge & Tunnel Auth.*, 2018 WL6002903, at *4 (E.D.N.Y. Nov. 15, 2018) ("Resolving the statute of limitations defense would require

addressing issues that are unrelated to the [] federal claims and that are most appropriate for adjudication in New York state court."). The Court therefore declines to exercise supplemental jurisdiction over Plaintiff's SHRL and CHRL claims.

## CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss Plaintiff's Title VII and ADA claims is GRANTED. The Court declines to exercise supplemental jurisdiction over the remaining SHRL and CHRL claims. The Clerk of the Court is respectfully requested to terminate the Motion at ECF No. 44 and close the case.

**SO ORDERED.**

Date:   **March 24, 2022**
       **New York, NY**

                                       **MARY KAY VYSKOCIL**
                                       **United States District Judge**